UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, NW Suite 301 Washington, D.C. 20036, <br><br>and<br><br> BOARD OF TRUSTEES OF THE SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, NW Suite 301 Washington, D.C. 20036, <br><br>                              Plaintiffs,<br><br>v.<br><br> ROSEEN REALTY CORP., d/b/a Arnold Walter Nursing Home 622 South Laurel Ave Hazlet, NJ 07730 <br><br>                              Defendant. | Case No.: |

## **COMPLAINT**

1. This is an action for legal and equitable relief brought pursuant to Sections 305, 502, and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1085, 1132, 1145 by the Service Employees International Union National Industry Pension Fund (the "Pension Fund"), an employee benefit plan, and its Board of Trustees ("Board of Trustees") to enforce the obligations of Defendant Roseen Realty Corp., d/b/a Arnold Walter Nursing Home, to

1

make pension contributions as well as Pension Protection Act and Multiemployer Pension Reform Act supplemental contributions, and to provide remittance reports to the Pension Fund, as well as to obtain judgment for delinquent base contributions and supplemental contributions, together with interest, liquidated damages, attorneys' fees, and other costs associated with this action.

2. The Court has jurisdiction over the ERISA claims asserted below under the terms of ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1), and ERISA Section 515, 29 U.S.C § 1145. In addition, the Court has jurisdiction over all claims asserted below under 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) because the Pension Fund is administered in this judicial district.

**Parties**

4. Plaintiff Pension Fund is a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Pension Fund is an employee pension benefit plan within the meaning of Section 3(2), (3) of ERISA, 29 U.S.C. § 1002(2), (3), and it is established and maintained for the purpose of providing retirement benefits to eligible employees of participating employers. The Pension Fund is also a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). Retirement benefits to eligible employees are funded by contributions of participating employers.

5. The Pension Fund is administered at 1800 Massachusetts Avenue, NW, Suite 301, Washington, DC 20036.

6. Plaintiff Board of Trustees is a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the named fiduciary of the Pension Fund within the meaning of Section 402 of ERISA, 29 U.S.C. § 1102(a), and is authorized and empowered to maintain this action.

7. Defendant Roseen Realty Corp. d/b/a Arnold Walter Nursing Home was for all relevant periods an "employer in an industry affecting commerce" as defined in Section 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. § 1002(5), (9), (11), and (12). On information and belief, Defendant's principal place of business is located at 622 South Laurel Avenue, Hazlet, NJ 07730.

8. During all relevant periods, Defendant Roseen Realty Corp. conducted business under the name of Arnold Walter Nursing Home ("Arnold Walter"), which is a nursing home. Defendant is a corporation incorporated in the state of New Jersey.

## Factual Background

**A. Defendant's Obligation to Make Monthly Contributions to the Fund**

9. At all relevant times, Defendant was a bargaining party to a collective bargaining agreement ("CBA") with Service Employees International Union 1199 New Jersey Healthcare Union ("the Union") establishing the terms and conditions of employment for covered employees during the period of March 13, 2008 through February 28, 2013, and that "shall be automatically renewed for an additional period of four . . . years," unless either party serves timely notice of its desire to terminate the Agreement or modify its terms.

10. The Union invoked the reopener clause of Article 34, Section 34.1 of the CBA, which provided for binding interest arbitration if the parties could not come to an agreement on wages, hours, and general terms and conditions of employment to be effective for the fifth year of the CBA.

11. On November 7, 2012, an arbitrator issued an Opinion and Award that extended the terms of the CBA in full force and effect through June 30, 2016.

12. Consistent with the CBA, the Opinion and Award obligated Defendant to make contributions to the Pension Fund on behalf of all covered employees at a rate of 2.75% of gross

earnings.

13.     Pursuant to the CBA, "[c]ontributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine."

14.     In the CBA, Defendant also expressly agreed to be bound by the provisions of the Pension Fund's Agreement and Declaration of Trust, as amended from time to time, including the Amended and Restated Agreement and Declaration of Trust ("Trust Agreement"), and by the Pension Fund's rules and regulations, including collection policies.

15.     Article III, Section 3.01 of the Trust Agreement provides that, "each [e]mployer, upon the signing of a collective bargaining agreement or participation agreement, or upon remitting contributions to the Fund, adopts and is bound by all provisions" of the Trust Agreement, amendments thereof, and all rules and regulations adopted by the Board of Trustees.

16.     Article III, Section 3.02 of the Trust Agreement provides that, "[a]n Employer shall contribute and pay Employer Contributions to the Fund in the amount and at the time specified in the applicable collective bargaining agreement with the Union or participation agreement with the Board of Trustees."

17.     Article III, Section 3.04 of the Trust Agreement further provides:

> [i]f an Employer shall fail to contribute and pay Employer Contributions to the Fund when the same shall be due and payable, the Employer shall be considered delinquent and in breach of the Trust Agreement, and shall pay, in addition to, or in lieu of, other remedies provided by law liquidated damages, plus interest on the total delinquency. Said costs, charges, damages, and interest shall be due as provided for in policies and procedures established by the Board of Trustees for that purpose.

18.     The Board of Trustees has adopted a Statement of Policy for Collection of Delinquent Contributions ("Collection Policy"), to which participating employers are bound,

4

including Defendant. The Collection Policy specifies that an employer who is delinquent in making contributions owes all of the following to the Pension Fund:

    a. net contributions due, including all monthly delinquent contributions, supplemental contributions and surcharges;

    b. interest on late payments (any payments not received by the last day of the month in which the contribution was due) at the rate of ten percent per annum until payment is received;

    c. interest on net contributions due at the rate of ten percent per annum; and

    d. liquidated damages on any payments "received later than the 15th day of the month following the month in which the contributions were due." In the case of such payments, "the Employer shall be obligated to pay liquidated damages in the amount of [five percent] of the Monthly Contributions Owed," with a minimum payment of $50 per month. Where litigation has commenced, however, the Employer is obligated to pay liquidated damages in the amount of the greater of (i) the interest owed on the delinquent contributions or (ii) twenty percent of the contributions owed.

19. Where an employer is delinquent in its contributions, Article III, Section 3.04 of the Trust Agreement provides that,

> [t]he Board of Trustees may take such steps, including the prosecution of or the intervention in any proceedings at law, in equity or in bankruptcy as it may deem necessary or desirable, in order to collect delinquent Employer Contributions, and the delinquent Employer shall be liable for the Trustees' reasonable expenses, including, but not limited to, attorney's fees and other disbursements, incurred in the collection of such delinquent Employer Contributions.

20. In addition to the obligation to contribute 2.75% of covered employees' gross monthly wages, participating employers are obligated to make supplemental contributions to the

5

Pension Fund pursuant to a Rehabilitation Plan developed in accordance with the Pension Protection Act of 2006 ("PPA") and the Multiemployer Pension Reform Act of 2014 ("MPRA").

21. On March 31, 2009, pursuant to the PPA, the Pension Fund's actuary certified that the Pension Fund was in "critical status" for the plan year beginning January 1, 2009. The Pension Fund's actuary subsequently has certified that the Pension Fund remains in critical status for each plan year from 2010 through 2021.

22. Participating employers in the Fund were notified of each critical status determination via letters sent each year.

23. On November 17, 2009, the Trustees adopted a "Rehabilitation Plan" in compliance with 29 U.S.C. § 1085(e)(3), for the purpose of enabling the Pension Fund to cease to be in critical status by the end of the plan's rehabilitation period. That Rehabilitation Plan, as amended, has remained in effect at all times relevant here. The Rehabilitation Plan included two schedules of contribution increases and benefit reductions, known as the "Preferred Schedule" and the "Default Schedule," and required participating employers to incorporate one of these schedules into their CBAs.

24. Participating employers were notified of the Rehabilitation Plan beginning in November 2009.

25. At all times relevant here, Defendant was obligated to remit supplemental contributions to the Pension Fund in accordance with the Preferred Schedule of the Rehabilitation Plan.

26. Under the Preferred Schedule, as imposed under the Arbitrator's Opinion and Award and incorporated into the CBA, Defendant was required to pay an additional supplemental contribution in an amount equal to 27.7% of all contributions otherwise due beginning July 1,

2012, with the supplemental contribution rate increasing by 7.75% each year thereafter as set forth in the Rehabilitation Plan.

27. Under the Collection Policy, an employer who is delinquent in making supplemental contributions owes to the Pension Fund the net supplemental contributions due, interest on late supplemental contributions, interest on net supplemental contributions, and liquidated damages as described in Paragraph 18.

### B. Defendant's Obligation to Provide Remittance Reports

28. In addition to pension contributions, participating employers are obligated to provide the Pension Fund remittance reports detailing, *inter alia*, covered hours worked or owed, contributions owed, and contributions paid. The CBA provides that "[c]ontributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee."

29. These remittance reports must be sufficient to show the amount of contributions and supplemental contributions owed by an employer for the contribution month to which the report pertains. Without appropriate remittance reports, the Fund cannot determine the correct amount of contributions owed.

30. Under the Pension Fund's Collection Policy,

> [i]f the Fund Office has not received complete and correct remittance report(s) necessary to determine the amounts owed by the Employer, the Fund Office shall estimate the contributions due based on the most recent remittance report submitted to the Fund, payroll information, or other basis as reasonably determined by the Fund, and the Employer shall be deemed delinquent in its contributions in that amount on a monthly basis, as a minimum, in any subsequent legal action.

### C. The Pension Fund's Authority to Conduct Payroll Audits

31. Pursuant to Section 3.03(b) of the Trust Agreement, the Board of Trustees "shall have the right to audit and examine any payroll, tax, employment, and other pertinent records" of

7

a contributing employer for the purpose of ensuring that such employer has remitted the appropriate amount of contributions to the Pension Fund. The Board of Trustees is further empowered to establish policies and procedures to govern the audit process.

32. Section 4 of the Collection Policy sets forth the Pension Fund's policies and procedures for conducting payroll audits of contributing employers. Pursuant to the Collection Policy, the employer is required to "make available to the auditor all books and records which the auditor determines are required," or at the request of the auditor, send those records to the Pension Fund.

**D. Defendant's Failures to Adhere to its Pension Fund Obligations**

33. In 2020, Defendant was selected by the Pension Fund for a payroll audit for the years 2018 and 2019. In connection with the payroll audit, the Pension Fund made multiple written requests of Defendant to provide payroll records and other relevant documentation necessary for the Pension Fund to conduct a payroll audit of Defendant for the period January 2018 through December 2019.

34. Defendant did not provide the requested records and failed generally to cooperate with the Pension Fund's efforts to conduct the audit.

35. Legal counsel thereafter demanded in writing that Defendant make available such books and records as necessary to conduct a payroll audit.

36. To date, Defendant has refused to provide the requested records or otherwise cooperate with the Pension Fund's efforts to conduct the audit.

37. In addition to Defendant's failure to comply with its payroll audit obligations, the Pension Fund has discovered that Defendant is delinquent in its contributions even as to the participant hours it has reported. More specifically, for the periods April 2017 and September 2020

through January 2021, Defendant has failed to remit any contributions or supplemental contributions owed to the Pension Fund for those months in the principal amount of $78,458.88. Of that amount, $59,428.90 is due as estimated contributions on the months September 2020 through January 2021, as to which no remittance reports were provided to the Pension Fund. Defendant also owes interest and liquidated damages for these delinquent contributions. For the periods April 2017 and September 2020 through January 2021, the total interest owed through the end of the year 2022 is estimated as $22,859.13. Interest continues to accrue.

38. For the periods December 2016 through March 2017 and May 2017 through August 2020, Defendant remitted contributions and supplemental contributions to the Pension Fund for those months but underpaid the amounts due. To date, the total principal amount of delinquent contributions owed is $147,801.57. Defendant also owes interest and liquidated damages for these delinquent contributions. The total interest owed through the end of the year 2022 is $57,213.66. Interest continues to accrue.

39. For the months December 2016 and March 2017, and the periods May 2017 through May 2020, and July 2020 through August 2020, Defendant remitted contributions and supplemental contributions to the Pension Fund but failed to make those payments in a timely manner. Under the terms of the CBA, the Trust Agreement, the Collection Policy, and the Rehabilitation Plan, Defendant owes interest and liquidated damages on those late payments. The total interest owed through the end of the year 2022 is $5,175.93. Interest continues to accrue.

40. In addition to failing to remit contributions, Defendant also has failed to provide remittance reports to the Pension Fund for the contribution months September 2020 through January 2021.

41. As a result of Defendant's failure to provide remittance reports for the contribution

months of September 2020 through January 2021, the Pension Fund is unable to ascertain the exact amount of contributions due for those months, but has been required to estimate contributions due based on prior remittance reports in accordance with its policies and procedures. To date, the total estimated principal amount of delinquent contributions owed is $59,428.90. The total estimated interest owed through the end of the year 2022 is $12,139.78. Interest continues to accrue. If Defendant's payroll records show that Defendant's contribution obligation is greater than the estimated amount, Defendant is liable for the full amount of the contributions actually owed, as well as interest and liquidated damages.

42. Prior to commencing this lawsuit, the Pension Fund notified Defendant of its delinquencies. On multiple occasions, the Pension Fund demanded in writing that Defendant submit the required remittance reports with payment of the delinquent contributions (including supplemental contributions) and advised Defendant of its liability for interest, liquidated damages, and costs. The Pension Fund made numerous attempts through counsel to obtain the outstanding remittance reports, delinquent contributions, interest, and liquidated damages owed. To date, Defendant has failed and/or refused to provide the missing reports, to make payments on any of the amounts owed, or otherwise provide a satisfactory response to the Pension Fund's attempts to resolve these deficiencies without instituting litigation.

### Count I

**Pursuant to Sections 305 and 515 of ERISA**

43. Plaintiffs reallege and incorporate Paragraphs 1 through 42.

44. Defendant is delinquent in its obligations to the Pension Fund for the contribution months of April 2017 and September 2020 through January 2021 in the principal amount of $78,458.88, by virtue of its failure to pay the base contributions and supplemental contributions

required by the CBA and under the Preferred Schedule of the Rehabilitation Plan. The interest owed through the end of the year 2022 is $22,859.13. Interest continues to accrue.

45. Defendant is delinquent in its obligations to the Pension Fund for the contribution months of December 2016 through March 2017 and May 2017 through August 2020 in the principal amount of $147,801.57, by virtue of its underpayment of the base contributions and supplemental contributions required by the CBA and under the Preferred Schedule of the Rehabilitation Plan. The interest owed through the end of the year 2022 is $57,213.66. Interest continues to accrue.

46. Defendant is also liable to the Pension Fund in the form of interest and liquidated damages on late payments for the contribution months of December 2016, March 2017, May 2017 through May 2020, and July 2020 through August 2020. The interest owed through the end of the year 2022 is $5,175.93. Interest continues to accrue.

47. Defendant's failure to make its required base contributions and supplemental contributions to the Pension Fund at the proper rate pursuant to the CBA, the Trust Agreement, the Collection Policy, and the Rehabilitation Plan violates Sections 305 and 515 of ERISA, 29 U.S.C. §§ 1085(e)(3)(C)(ii), 1145.

48. Under Sections 515 and 502(g)(2) of ERISA, 29 U.S.C. §§ 1085(e)(3)(C)(iv), 1145, 1132(g)(2), the CBA, the Trust Agreement, the Collection Policy, and the Rehabilitation Plan, Defendant is liable to the Pension Fund and its Trustees for the full amount of all delinquent contributions (including supplemental contributions), plus interest at the rate of ten percent per annum on all delinquent contributions, as well as liquidated damages in the amount of the greater of the accrued interest on the delinquent contributions or twenty percent of the delinquent contributions, attorneys' fees, and costs of this action.

## Count II

### Pursuant to Sections 305, 502(a)(3), and 515 of ERISA

49. Plaintiffs reallege and incorporate Paragraphs 1 through 48.

50. Defendant is obligated, under the terms of the CBA, the Trust Agreement, the Collection Policy, and the Rehabilitation Plan to provide remittance reports along with contributions and supplemental contributions to the Pension Fund.

51. Defendant has failed to submit remittance reports, or contributions or supplemental contributions for the contribution months of September 2020 through January 2021. Without these remittance reports, the Pension Fund is unable to determine the precise amount of delinquent contributions due for these months. Defendant therefore is liable for, at a minimum, estimated delinquent contributions in the principal amount of $11,885.78 per month for each month, and estimated interest in the amount of $12,139.78. Interest continues to accrue.

52. Defendant's failure to make its required contributions to the Pension Fund pursuant to the terms of the plan and the CBA and the Rehabilitation Plan constitute violations of Sections 305 and 515 of ERISA, 29 U.S.C. §§ 1145, 1805(e)(3)(C)(ii), (iv).

53. Under Sections 515 and 502(g) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2), the CBA, the Trust Agreement, the Collection Policy, and the Rehabilitation Plan, Defendant is liable to the Pension Fund for the full amount of all delinquent contributions (including supplemental contributions), plus interest at the rate of ten percent per annum on all delinquent contributions, liquidated damages in the amount of the greater of the accrued interest on the delinquent contributions or twenty percent of the delinquent contributions, attorneys' fees, and costs of this action.

54. Notwithstanding Plaintiffs' efforts to secure Defendant's voluntary compliance

with its contractual and statutory obligation to make contributions to the Pension Fund, Defendant has continued to fail and/or refuse to make such payments in a timely manner and has refused to provide remittance reports or other records required by the Pension Fund's rules and the CBA.

55. Defendant's failure to comply with its reporting obligations to the Pension Fund is a violation of its obligations under the plan and ERISA § 502(a)(3). To the extent that Defendant's failure to report contributions has caused the estimated contribution obligation to understate Defendant's actual contribution obligation, its violation has further damaged the Pension Fund.

## Count III

### Pursuant to Sections 502(a)(3) and 515 of ERISA

56. Plaintiffs reallege and incorporate Paragraphs 1 through 55.

57. Defendant was obligated, under the terms of the CBA, and the Pension Fund's Trust Agreement and Collection Policy to provide payroll records and other documentation as requested by the Pension Fund such that the Pension Fund may perform a payroll audit to determine if Defendant has remitted all contributions due to the Pension Fund on behalf of its employees.

58. Defendant has failed to cooperate with the Pension Fund's request to audit Defendant's payroll records for the period January 2018 through December 2019.

59. Notwithstanding Plaintiffs' efforts to secure Defendant's voluntary compliance with its contractual and statutory obligation to provide the Pension Fund the information necessary to perform the payroll audit, Defendant continued to fail and/or refuse to provide the requested information.

60. Defendant's failure to provide the requested audit documentation to the Pension Fund is a violation of its obligations under the Pension Fund's Trust Agreement and Collection Policy and ERISA § 502(a)(3). Audit documentation is necessary to determine whether

Defendant's remittance reports accurately reflect hours worked for which contributions are due. Defendant's failure to comply with ERISA and the Pension Fund's rules may have caused additional damages, as yet unknown.

### *Prayer for Relief*

**WHEREFORE**, Plaintiffs request the following:

A. A judgment ordering Defendant:

1. To pay to the Pension Fund all delinquent base and supplemental contributions owed to the Pension Fund;

2. To pay to the Pension Fund interest that has accrued on all delinquent contributions determined to be owed, at the rate of ten percent per annum;

3. To pay to the Pension Fund an additional amount equal to the greater of the accrued interest or liquidated damages in the amount of twenty percent of the delinquent contributions;

4. To pay to the Plaintiffs their reasonable attorneys' fees and costs of this action; and

B. An injunction ordering Defendant to provide all outstanding remittance reports, produce all audit records requested by the Pension Fund to conduct a payroll audit of calendar years 2018 and 2019, and make all past payments due to the Pension Fund; and

C. Any such further relief this Court may deem just and proper.

                                              Respectfully submitted,

Date: January 13, 2023

                                              /s/ Robert Alexander
                                              Robert Alexander (DC Bar ID: 465673)
                                              Kara Naseef (DC Bar ID: 1671394)
                                              Bredhoff & Kaiser, P.L.L.C.
                                              805 Fifteenth Street, N.W. Suite 1000
                                              Washington, D.C. 20005
                                              (202) 842-2600
                                              (202) 842-1888 (fax)
                                              ralexander@bredhoff.com
                                              knaseeef@bredhoff.com

*Counsel for the Plaintiffs Service Employees International Union National Industry Pension Fund and the Board of Trustees of the Service Employees International Union National Industry Pension Fund*